UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

GRAOCH ASSOCIATES #33                                                      PLAINTIFF
LIMITED PARTNERSHIP d/b/a
AUTUMN RUN APARTMENTS


v.                                                                              CIVIL ACTION NO. 3:05-CV-113-S


LOUISVILLE AND JEFFERSON COUNTY
METRO HUMAN RELATIONS COMMISSION                                            DEFENDANT

**MEMORANDUM OPINION**

This matter is before the court on cross motions by the plaintiff, Graoch Associates #33 Limited Partnership d/b/a Autumn Run Apartments ("Graoch"), and by the defendant, Louisville and Jefferson County Metro Human Relations Commission ("Commission"), for summary judgment. This is an action for declaratory relief brought pursuant to 28 U.S.C. §2201 and Fed. R. Civ. P. 57. The parties present the question of whether a landlord's decision to withdraw from the federal Section 8 voucher program ("Section 8")[1] can subject it to a claim of racial discrimination, based on a disparate impact theory, under the Fair Housing Act ("FHA"), 42 U.S.C. §§ 3600-3620. For the reasons set forth below, the plaintiff's motion is **GRANTED** and the defendant's motion is **DENIED.**

FACTS

Graoch owns an apartment complex, Autumn Run Apartments ("Autumn Run"), where Joyce

---

[1] The Department of Housing and Urban Development ("HUD") administers Section 8 as set forth in 24 C.F.R. §§ 982.1-982.643.

1

McNealy, Tina Gary, and Angela Thornton resided in March of 2003. Prior to March 13, 2003, Graoch participated in Section 8 through the Housing Authority of Jefferson County ("HAJC"). Graoch accepted approximately thirty Section 8 tenants at Autumn Run while participating in the program. In late 2002/early 2003, Graoch's relationship with HAJC began to deteriorate as a result of disputes over rent abatements. Graoch claims that, as a result of this conflict, it decided to withdraw from Section 8. On March 13, 2003, Graoch notified HAJC that it would no longer accept new Section 8 residents or renew existing Section 8 leases, but that it would continue to honor the vouchers of the existing residents until the expiration of their current leases. At this time, Autumn Run housed eighteen Section 8 families, seventeen of which were African-American. McNealy, Gary and Thornton were three of those residents. Upon expiration of their leases, Graoch did not renew them because of their Section 8 status.

In December of 2003, the Kentucky Fair Housing Council ("KFHC"), in conjunction with McNealy, Gary and Thornton, filed a complaint with the Commission, alleging that Graoch's decision to cease participation in Section 8 constituted unlawful racial discrimination in violation of the FHA. By letter dated June 30, 2004, the Commission notified Graoch of its finding that there was probable cause to believe Graoch's decision to withdraw from Section 8 violated the FHA. The matter was then referred to a hearing officer in the Office of the Attorney General, Division of Administrative Hearings. Graoch promptly filed a motion to stay the administrative proceedings in order to allow it to file a declaratory judgment action in federal court. The Commission joined in support of the motion to stay.

On February 8, 2005, the hearing officer granted the motion to stay the administrative proceedings. On February 22, 2005, Graoch filed the instant action for declaratory relief, which

involves only two parties: Graoch and the Commission. Both have filed motions for summary judgment. Graoch seeks a declaration that a landlord's decision to withdraw from Section 8, standing alone, is insufficient to establish a *prima facie* case of racial discrimination under the FHA. The Commission seeks a declaration that a disparate impact claim is cognizable under the FHA and that such a claim may be brought against a landlord who withdraws from Section 8 if that withdrawal disproportionately impacts a racial minority.

## DISCUSSION

Summary judgment is appropriate if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56 (c). The moving party bears the burden of establishing these elements. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986). Not every factual dispute between the parties prevents summary judgment. *60 Ivy Street Corp. v. Alexander*, 822 F.2d 1432, 1435 (6th Cir.1987). To preclude summary judgment, the disputed facts must be material, such that "they might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986). The dispute must also be genuine, such that "if the facts were proven at trial, a reasonable jury could return a verdict for the non-moving party." *Id.* "The disputed issue does not have to be resolved conclusively in favor of the non-moving party, but that party is required to present some significant probative evidence which makes it necessary to resolve the parties' differing versions of the dispute at trial." *60 Ivy Street Corp.*, 822 F.2d at 1435. In making these determinations, the court views all facts and inferences in a light most favorable to the nonmoving party. *Id.* Review of cross motions for

summary judgment requires the court to evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party. *Wiley v. U.S.*, 20 F.3d 222, 224 (6th Cir. 1994).

Section 3604(b) of the FHA prohibits landlords from "discriminat[ing] against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision or services or facilities in connection therewith, because of race, color, religion, sex, familial status, or national origin." The Commission alleges that Graoch's withdrawal from Section 8 violated the FHA because it disproportionately affected African-Americans.

The parties agree that the FHA includes a disparate impact standard. *See Defendant's Motion for Summary Judgment* (DN 18), p. 5; *Plaintiff's Cross-Motion for Summary Judgment* (19), p. 7. However, Graoch argues that a disparate impact claim cannot rest solely upon a landlord's decision to withdraw from the Section 8 program. Graoch relies on two circuit court opinions in support of its assertion.

In the first, *Knapp v. Eagle Management Corp.*, 54 F.3d 1272 (7th Cir. 1995), the Seventh Circuit Court of Appeals acknowledged that a disparate impact analysis applied in FHA cases, noting that it had previously used such an analysis in *Metropolitan Hous. Dev. Corp. v. Village of Arlington Heights*, 558 F.2d 1283 (7th Cir. 1977). However, the *Knapp* court qualified its endorsement of that approach stating that "in *Arlington Heights*, . . . we 'refuse[d] to conclude that every action which produces discriminatory effects is illegal . . . Rather, the courts must use their discretion in deciding whether, given the particular circumstances of each case, relief should be granted under the statute.'" *Id.* at 1282 (quoting *Arlington Heights*, 558 F.2d at 1290).

According significant weight to the voluntary nature of the Section 8 program, the *Knapp*

4

court concluded that a disparate impact theory could not be used to support the plaintiff's claim that the defendant landlord violated the FHA when it refused to rent to an African-American woman because she was a Section 8 voucher holder. "[N]on-participating owners routinely reject Section 8 voucher holders. We assume that their non-participation constitutes a legitimate reason for their refusal to accept section 8 tenants and that we therefore cannot hold them liable for racial discrimination under the disparate impact theory." *Id.* at 1280. Because "no principled way exists to distinguish [non-participating] owners from those who have agreed to accept Section 8 tenants" without discriminating against those who chose to participate in the program, the *Knapp* court concluded that a disparate impact analysis was not appropriate. *See id.*

We agree that allowing a disparate impact claim to proceed solely on the basis of a landlord's withdrawal from Section 8 would deter landlords from participating in Section 8, a program designed to help lower income people obtain affordable housing. Many landlords would no doubt be reluctant to join a program from which there was, in reality and existentially, no exit.[2] Such a result would certainly not be consistent with Congress' intent in creating such program. *See id.* ("The actions of both non-participating and participating owners have the same impact on minorities and to hold only the latter liable for racial discrimination for that conduct would deter them from joining or remaining involved in the program.").

The Second Circuit Court of Appeals adopted this reasoning in the case of *Salute v. Stratford Greens Garden Apartments*, 136 F.3d 293 (2d Cir. 1998). In *Salute*, the defendant landlord agreed

---

[2] Sartre, *Huis Clos*, 1943. While the court does not here embrace existentialist views, we nevertheless note the Orwellian absurdity of a "voluntary" program attracting participants through a one-way door, past which they would become trapped forever by the impact of any attempt to leave.

5

to accept Section 8 vouchers from tenants already living in the complex but refused to accept new Section 8 tenants. Rather than evicting the current tenants, the landlord chose to accept the vouchers. The *Salute* court refused to penalize the landlord for its actions, noting that a contrary finding would ignore Congress' intent, as expressed in the relevant Section 8 legislation. *See id.* at 297-98. The voluntary nature of the program weighed very heavily in the *Salute* court's decision not to allow the disabled plaintiffs to proceed on a disparate impact theory even though the landlord accepted Section 8 vouchers from some residents while rejecting other applicants who were on Section 8.

*Salute* is factually distinct from both *Knapp* and the instant case in that the landlord never accepted initial applications from Section 8 tenants. The landlord effectively created an exception to its own policy by choosing to accept Section 8 vouchers from residents who had become voucher holders during the course of their tenancy. Nonetheless, the *Salute* court's analysis, regarding whether a disparate impact standard applied, mirrored that of *Knapp*. The voluntary nature of Section 8 dictates the same result in the case at bar: refusal to accept Section 8 vouchers *or* withdrawal from Section 8, standing alone, is insufficient to establish a *prima facie* case of discrimination. The *Salute* court adopted the *Knapp* conclusion that "the owners' non-participation constitutes a legitimate reason for their refusal to accept Section 8 tenants and . . . we therefore cannot hold them liable for . . . discrimination under the disparate impact theory." *Id*. at 302 (quoting *Knapp*, 54 F.3d at 1280).

In both *Knapp* and *Salute*, the landlords accepted vouchers from some tenants, while rejecting them from others. The situation in the case at bar is even more benign because Graoch chose to withdraw from the program entirely, refusing to renew the leases of all Section 8 tenants and declining to accept vouchers from any new applicants. *See Defendant's Motion for Summary*

*Judgment,* Exhibits 1, 11. The *Knapp* and *Salute* holdings, therefore, adequately encompass the present situation in which the landlord unilaterally discontinued its participation, making no distinction between Section 8 tenants.

The current consensus among the federal courts of appeal is that plaintiffs may establish discrimination under the FHA by using a disparate impact analysis. *See e.g., Mountain Side Mobile Estate Partnerships v. Secretary of Hous. and Urban Dev.,* 56 F.3d 1243 (10th Cir.). The parties do not dispute that point. However, the *Knapp* and *Salute* decisions effectively carve out an exception for Section 8 cases.[3] We accept the Seventh Circuit Court of Appeals' conclusion that although "a showing of discriminatory intent is not required [under the FHA], we refuse to conclude that every action which produces a discriminatory effect is illegal. Such a *per se* rule would go beyond the intent of Congress and would lead courts into untenable results in specific cases." *Arlington Heights*, 558 F.2d at 1290.[4] We conclude that a landlord's decision to withdraw from Section 8, standing alone, is insufficient to establish a *prima facie* case of discrimination, even if that withdrawal disproportionately impacts a protected class.

The Commission, however, cites an unpublished opinion styled, *Green v. Sunpointe Associates, LTD.,* 1997 WL 1526484 (W.D.Wash. 1997), for the proposition that Section 8 participants should not be exempted from disparate impact claims because of the voluntary nature

---

[3] When a landlord withdraws from Section 8, this exception requires some evidence beyond mere statistical data establishing a disparate impact on a protected class. We agree with the parties' contentions that Section 8 participants do **not** have a wholesale exemption from the FHA. *See Plaintiff's Motion for Summary Judgment* (DN 18), p. 16.

[4] The *Arlington Heights* court then articulated four factors which should be weighed in determining whether actions producing discriminatory effects are, in fact, illegal. It is unnecessary for this court to balance these factors because we have already resolved the narrow question posed in the situation at bar.

of the program.[5]  In *Green*, the court chose not to "impose a *per se* rule against disparate impact claims based on a withdrawal from the Section 8 program."  *Id.* at 4.  Instead, the *Green* court opined that if a plaintiff establishes a *prima facie* case under a traditional disparate impact analysis, a landlord should be permitted to "present his goal to terminate participation in the Section 8 program as a business necessity."  *See id.*  We reject this conclusion, instead agreeing with *Knapp* and *Salute,* as discussed above.

We note that the *Green* court also acknowledged Congress's clear intent that participation in Section 8 remain voluntary, determining that "substantial weight must be given to such a goal."  *See id.*  In *Green*, the defendant landlord maintained that its decision to cease participation in Section 8 was based on financial reasons; specifically, the landlord desired "to eliminate the costs of administering the Section 8 program in order to reduce the substantial losses that [it] ha[d] incurred at [the apartment complex]."  *Id.* at 7.  Although the *Green* court did not ultimately decide the issue, it opined that "[t]his goal, when coupled with the voluntary nature of the Section 8 program, could well be a legitimate business necessity sufficient to rebut plaintiff's *prima facie* case."  *Id.*  Using this approach, the voluntary nature of Section 8 does not warrant creating an exception; it does, however, bolster the landlord's showing of "business necessity."

In its complaint, Graoch asks the court to declare that a landlord's withdrawal from Section

---

[5] The Commission also cites *Bronson v. Crestwood Lake Section 1 Holding Corp.*, 724 F.Supp. 148 (S.D.N.Y. 1989).  *Bronson*, however, is not applicable to the case at bar because the situations are factually distinct.  In *Bronson*, the plaintiffs challenged many of the landlord's actions and the court noted the "defendant's inconsistent articulation and application of its tenant selection policies cast the sincerity of those policies in a somewhat questionable light."  *Id.* at 157.  In the instant case, there is no similar dispute.  The present issue is very narrow; the court must decide whether withdrawal from Section 8, *alone*, suffices to establish discrimination under a disparate impact analysis.

8

8, standing alone, does not establish a *prima facie* case of discrimination under a disparate impact theory. "In the event that the Court finds that a landlord's decision to withdraw from Section 8 *can* subject it to a claim of disparate impact discrimination," however, Graoch seeks a declaration that its "decision to withdraw from Section 8 *in this particular case* was the result of a business necessity." *Complaint* (DN 1), p.4-5 (emphasis in original). Making such a determination would involve an inquiry similar to the one set forth in *Green* above. However, we expressly decline to consider this alternative request for declaratory relief. Such a declaration is unnecessary in light of the court's ruling that a landlord's decision to withdraw from Section 8 is *not* sufficient to subject it to a claim of disparate impact discrimination.

For the reasons set forth above, the court will grant the plaintiff's motion for summary judgment, declaring that a landlord's withdrawal from Section is not *prima facie* evidence of discrimination under the FHA. A separate order will be entered herein this date in accordance with this opinion.

cc: Counsel of Record

9